UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKEEL QUADEER WALLER,

                             Plaintiff,

        -v-

SHERIFF CARL DUBOIS; COUNTY OF
ORANGE; CORRECT CARE SOLUTIONS;
RN NURSE DIANE; DOCTOR SODEN;
DOCTOR ELLIOT WAGNER; MD OSCAR
JERKINS; COLONEL KENNETH DECKER

                             Defendants.

No. 16-CV-6697 (KMK)

<u>OPINION & ORDER</u>

Appearances:

Shakeel Quadeer Waller
Alden, NY
*Pro se Plaintiff*

Jonathan H. Bard, Esq.
Barclay Damon LLP
Albany, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Shakeel Quadeer Waller ("Plaintiff"), currently an inmate at Wende

Correctional Facility, brings this Action pursuant to 42 U.S.C. § 1983 against the County of

Orange, Correct Care Solutions ("Correct Care"), Carl DuBois ("DuBois"), Kenneth Decker

("Decker"), Dr. Marianne Soden ("Dr. Soden"), Oscar Jerkins ("Dr. Jerkins"), Dr. Elliot Wagner

("Dr. Wagner"), and Diane Simpkins ("Simpkins") (collectively, "Defendants").  Plaintiff

alleges that Defendants violated his rights under the Eighth Amendment by failing to provide

him with proper medical care to treat a knee injury suffered while playing basketball at Orange

County Jail. (*See* Second Am. Compl. ("SAC") 4, 9–10 (Dkt. No. 28).)[1] Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mot. To Dismiss Pl.'s Second Am. Compl. ("Defs.'s Mot.") (Dkt. No. 39).)[2] For the reasons to follow, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from the Second Amended Complaint, and are assumed true for the purpose of resolving the Motion.

On April 2, 2016, Plaintiff was playing basketball in the yard at Orange County Jail when he slipped and fell. (*See* SAC 9.) As a result of this fall, Plaintiff "severely injured his right knee," and was unable to get up. (*Id.*) Officer Elliot then called for medical staff, to whom Plaintiff relayed this story. (*See id.*) Plaintiff was unable to walk on his own volition and was thereafter put in a wheelchair and taken to the medical facility for evaluation. (*See id.*) Plaintiff made an initial request to go to a hospital outside of Orange County Jail, but this was declined. (*See id.*) In the interim, Plaintiff asked to see a doctor, but was told that there were none available at that time. (*See id.*) Ultimately, Plaintiff was prescribed Motrin and bed rest for the next two days by an unnamed doctor at Orange County Jail. (*See id.*) Plaintiff was then sent back to his housing unit. (*See id.*)

---

[1] For ease of reference, given Plaintiff's use of a standard complaint form with additional pages attached, the Court cites to the ECF-generated page numbers stamped at the top of Plaintiff's Complaint.

[2] All Defendants except for Dr. Wagner have joined in the Motion. As noted below, Dr. Wagner has been served in this case, but has yet to appear.

However, on April 3, 2016, Plaintiff was taken back to the medical facility at Orange County Jail, via wheelchair, so that x-rays of his knee could be taken. (*See id.*) The next day, Plaintiff was to review his x-rays with Dr. Wagner, but he was informed that the x-rays could not be located. (*See id.*) Dr. Wagner conducted his own review of Plaintiff's right knee, and informed Plaintiff that he needed to see an outside doctor. (*See id.*) Plaintiff was then sent back to his unit with crutches and an ill-fitting knee brace. (*See id.*)

Three days later, on April 7, 2016, Plaintiff asked an unnamed nurse whether she had seen the x-ray and whether she knew what the x-ray had shown. (*See id.*) The nurse informed Plaintiff that "the right Patellar [sic] came off," and that she was unaware of any statements by Dr. Wagner regarding a prior injury suffered by Plaintiff. (*Id.*) However, she did inform Plaintiff that Dr. Wagner had been fired. (*See id.*)

Plaintiff returned to the medical facility on April 11, 2016. (*See id.*) There, he was told by an unnamed nurse that Plaintiff had suffered "an old right knee fracture," to which Plaintiff responded by informing the nurse that "he never hurt his knee before." (*Id.* at 9–10.) The nurse told Plaintiff that he would be sent to an outside facility, but until then he would have to return to his unit. (*See id.* at 10.) However, on both April 16 and April 18, 2016, Plaintiff was informed by unnamed nurses that he was "on the list to see the outside [doctor]," but the timing had not yet been determined. (*Id.*)

While awaiting transfer to the outside doctor, Plaintiff fell down the steps while walking on his crutches. (*See id.*) As a result, Plaintiff was taken to an outside hospital where he was told that he needed to be seen by a doctor within two days for his right knee. (*See id.*) Plaintiff was forced to wait for four days to see the specialist, and ultimately underwent surgery to repair his right knee on April 29, 2016. (*See id.*)

In the aftermath of his surgery, Plaintiff alleges that Dr. Soden failed to properly clean his wound, resulting in an infection, "even after . . . the specialist explained to her thr[ough] a phone call and paper work." (Letter from Plaintiff to Court (July 9, 2017) ("Pl.'s Letter") 3 (Dkt. No. 31).)[3] Dr. Soden and Nurse Simpkins also declined to give Plaintiff the pain medication prescribed by the specialist, instead providing him with the medication of their choosing. (*See id.*)

B. Procedural Background

Plaintiff filed his Complaint on August 25, 2016. (*See* Dkt. No. 2.) Plaintiff's request to proceed in forma pauperis was granted on December 7, 2016. (*See* Dkt. No. 6.) On December 23, 2016, Chief Judge McMahon issued an order directing Plaintiff to amend his complaint to add detail to his claims. (*See* Order to Amend (Dkt. No. 7).) After receiving an extension to file his Amended Complaint, (*see* Order (Dkt. No. 10)), Plaintiff filed his Amended Complaint on March 24, 2017, (*see* Am. Compl. (Dkt. No. 11)). On June 27, 2017, after being informed of the need for more detail in the pre-motion letter, (*See* Order (Dkt. No. 21)), counsel for all Defendants but Dr. Wagner submitted a letter to the Court requesting permission to file their Motion To Dismiss on behalf the appearing Defendants pursuant to Federal Rule of Civil

_____

[3] Because of Plaintiff's pro se status, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Accordingly, the Court considers the claims made in Plaintiff's July 9, 2017 letter and opposition papers in addressing his deliberate indifference claims against Defendants.

Procedure 12(b)(6), (*see* Letter from Jonathan H. Bard, Esq., to Court (Dkt. No. 22)).  Plaintiff thereafter filed a Second Amended Complaint on July 6, 2017, wherein he reasserted the identical factual scenario alleged in the Amended Complaint.  (*See* SAC.)  On July 20, 2017, the Court entered an Order that Defendants could file their Motion To Dismiss by August 12, 2017, and Plaintiff should respond to any Motion by September 12, 2017.  (*See* Mot. Scheduling Order (Dkt. No. 32).)

On August 9, 2016, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 39–42.)  Dr. Wagner did not join the Motion, though he was served on August 7, 2017.  (*See* Dkt. No. 43.)  Plaintiff filed his Opposition to Defendants' Motion on August 23, 2017, (*see* Pl.'s Resp. To Mot. To. Dismiss ("Pl.'s Opp'n") (Dkt. No. 45)), and Defendants filed their Reply on August 31, 2017, (*See* Defs.' Reply in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 46)).

While the Motion was pending, Plaintiff filed a letter to the Court seeking appointment of counsel.  (*See* Letter from Plaintiff to Court (Nov. 22, 2017) (Dkt. No. 49).)  Plaintiff then submitted a formal application requesting counsel in this Action, (*see* Application for Counsel (Dkt. No. 50)), which the Court denied without prejudice on January 8, 2018, (*see* Order (Dkt. No. 54)).

## II. Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

Plaintiff alleges that the delay in treatment for his knee, as well as the allegedly incorrect diagnosis by Wagner, constituted deliberate indifference to a serious medical condition in violation of the Eighth Amendment.

1.  County of Orange and Correct Care Monell Liability

Defendants argue that Plaintiff has failed to state a claim for municipal liability against either the County of Orange or Correct Care.  (*See* Defs.' Mem. in Supp. of Mot. To Dismiss ("Defs.' Mem.") 7–11 (Dkt. No. 41).)  As a general rule, private entities like Correct Care are not liable under § 1983, but "conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to

the constitutional limitations [p]laced upon state action." *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974); *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided . . . ." (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). For example, when a private company provides medical care in prisons, it "performs a role traditionally within the exclusive prerogative of the state and therefore . . . is the functional equivalent of the municipality." *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013). Correct Care will therefore be treated as a municipal actor for the purposes of this Motion. *See Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351, 2017 WL 2274485, at *5 (S.D.N.Y. May 24, 2017) ("Corizon, although a private entity, is treated as a municipal actor for purposes of this lawsuit.").

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that municipalities may be sued under § 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." 436 U.S. 658, 690 (1978). "It is axiomatic that municipalities cannot be held liable pursuant to § 1983 on a respondeat superior theory." *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (italics omitted) (citing *Monell*, 436 U.S. at 690). "To hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (alteration omitted). There are four ways a plaintiff may allege a policy or custom:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of [the] plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Betts v. Rodriquez*, No. 15-CV-3836, 2016 WL 7192088, at *5 (S.D.N.Y. Dec. 12, 2016) (internal quotation marks omitted).

Here, Plaintiff has not alleged any formal policies or practices that would substantiate a claim under *Monell* as to either the County of Orange or Correct Care. In the Second Amended Complaint, Plaintiff does not allege the existence of a policy put in place by either the County of Orange or Correct Care to deny or delay someone being held at Orange County Jail from receiving medical care. Indeed, Plaintiff does not differentiate between those individuals working for the County of Orange or Correct Care, making it impossible for the Court to determine who, if anyone, would be liable for imposition of such a policy. Plaintiff also does not allege any actions or decisions made by anyone working for either the County of Orange or Correct Care who had "final decision making authority" which resulted in the delay of his medical care. Finally, although it is possible that Plaintiff seeks to imply that the lack of treatment he received was actually part of an implicit and accepted custom at Orange County Jail or by Correct Care, there are no facts alleged in the Second Amended Complaint that connect his treatment to a practice or custom at the County of Orange or Correct Care, thus dooming Plaintiff's claim. *See Thomas v. City of New York*, No. 16-CV-2924, 2016 WL 3951094, at *2 (E.D.N.Y. July 20, 2016) (granting a motion to dismiss where the "plaintiff [did] not allege . . . a policy officially adopted by the City of New York and a causal connection between a policy and the deprivation of [the] plaintiff's constitutional rights"); *Melvin v. Cty. of Westchester*, No. 14-

CV-2995, 2016 WL 1254394, at *15 (S.D.N.Y. Mar. 29, 2016) (finding allegations that Correct Care, among other defendants, "acted pursuant to a policy or custom, without any facts suggesting the policy's existence, are plainly insufficient." (alterations and internal quotation marks omitted)); *Washington v. Westchester Cty. Dep't of Correction*, No. 13-CV-5322, 2015 WL 408941, at *10 (S.D.N.Y. Jan. 30, 2015) ("[E]ven had Plaintiff alleged a viable claim for deliberate indifference as to any of the individual defendants, he has failed to allege any facts that would support a *Monell* policy or practice claim against either [Correct Care or Westchester County], necessitating dismissal."). At most, Plaintiff might be understood to be alleging that the medical staff at Orange County Jail, or hired by Correct Care, were not properly trained because they did not accurately identify the injury to his knee. (*See* Pl.'s Opp'n ¶¶ 1–4.) However, Plaintiff has not provided enough detail in his Second Amended Complaint to support any plausible inference that the County of Orange or Correct Care failed to train their respective employees. *See Khanukayev v. City of New York,* No. 09-CV-6175, 2012 WL 3538729, at *4 (S.D.N.Y. Aug.13, 2012) (dismissing a failure to train claim where "the complaint [does not] . . . allege . . . the manner in which there was a failure to train"); *Araujo v. City of New York,* No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where the plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct"). Accordingly, Plaintiff has failed to establish municipal liability as to either the County of Orange or Correct Care.

## 2. Eighth Amendment Claims as to the Individual Defendants

Plaintiff alleges that Defendants were "deliberately indifferent to [his] severe knee injury [by] delaying [the] receipt of medically necessary surgery for 27 days." (Pl.'s Letter 1.) Each of the moving Defendants argues that Plaintiff's claims must be dismissed because "Plaintiff fails

to identify any personal involvement by the Defendants." (Defs.' Mem. 10.) Defendants further argue that Plaintiff has not adequately shown that the alleged lack of medical care he received at the Orange County Jail amounts to "deliberate[] indifferen[ce] to [Plaintiff's] serious medical need[s]." (*Id.* at 11.)

### a. Standard of Review

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that the "conditions of confinement [were] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments."[4] *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Here, too, the inquiry proceeds by two steps. "First, the plaintiff must establish that he suffered a sufficiently serious constitutional deprivation. Second, the plaintiff must demonstrate that the defendant acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263,

---

[4] On February 6, 2018, Defendants provided the Court with a Certificate of Disposition confirming that Plaintiff was convicted on March 22, 2016, thus making him a convicted prisoner at the time of the incident occurring on April 2, 2016. (Letter from Jonathan H. Bard, Esq., to the Court ("Bard Letter") (Dkt. No. 55).)

279 (2d Cir. 2006), and the second "asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003); *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (same). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock*, 315 F.3d at 162 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the defendant must "appreciate the risk to which a prisoner was subjected," and had a "subjective awareness of the harmfulness associated with those conditions to be liable for meting out that punishment." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (internal quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach

the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (internal quotation marks omitted). "[M]ere negligence" is not enough to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (internal quotation marks omitted); *see also Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014) (same). Relatedly, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

For the sake of clarity, the Court will address the issues related to the medical defendants (Dr. Soden, Dr. Jerkins, and Nurse Simpkins) and the law enforcement defendants (DuBois and Decker) separately.

### b. Dr. Soden, Dr. Jerkins, and Nurse Simpkins

In his opposition papers, Plaintiff alleges that both Dr. Soden and Dr. Jerkins refused to see him after the initial diagnosis of Dr. Wagner indicated that Plaintiff's injury was "old" and did not require surgery. (*See* Pl.'s Opp'n ¶ 4.) Instead, Plaintiff was given Motrin and prescribed bed rest in the hope that the injury would heal itself. (*See* SAC 9.) After Plaintiff fell down the steps while walking on crutches, Plaintiff was finally taken to an outside hospital where he was told that he needed to have surgery on his right knee. (*See id.* at 10.) Once Plaintiff underwent this surgery, he alleges that Dr. Soden and Nurse Simpkins "refused to follow the advice of . . . the specialist," in both failing to properly clean his wound and failing to give him the pain medication prescribed by the specialist. (Pl.'s Letter 3.)

Ultimately, Plaintiff's allegations are insufficient to state a deliberate indifference claim against Dr. Soden, Dr. Jerkins, or Nurse Simpkins for their actions prior to his surgery. As

alleged, Plaintiff's medical needs were not ignored. The Second Amended Complaint and Plaintiff's Opposition each recount dates Plaintiff met with doctors and nurses at Orange County Jail, including Dr. Soden, Dr. Jerkins, and Nurse Simpkins. (*See* SAC 9–10; Pl.'s Opp'n ¶¶ 1–4.) The mere delay in surgery—from the date of his injury on April 2, 2016 to his surgery on April 29, 2016—does not constitute deliberate indifference. "While a lengthy, unjustifiable delay in providing necessary medical treatment may constitute deliberate indifference, that is not at all what happened here." *Robinson v. Clark*, No. 15-CV-8434, 2017 WL 775813, at *8 (S.D.N.Y. Feb. 27, 2017) (internal quotation marks omitted). During the month of April, Plaintiff was seen by Dr. Wagner and Dr. Jerkins, as well as numerous unnamed nurses and doctors, who determined that the use of Motrin, combined with bed rest, crutches, and a knee brace, would be appropriate to treat Plaintiff's knee injury. (*See* SAC 9–10; Pl.'s Opp'n ¶¶ 1–4.) Furthermore, Plaintiff's request to see an outside doctor for further evaluation was not denied, and indeed was facilitated within less than three weeks. (*See* SAC 9–10; Pl.'s Letter 2.) Such a delay is not grounds for a deliberate indifference claim. *See Ferguson v. Cai,* No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness."); *see also Robinson*, 2017 WL 775813, at *8 (holding that a delay in surgery from April 2015 to December 2015 is insufficient, without more, to support an Eighth Amendment claim); *Feliciano*, 2017 WL 1189747, at *11 ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, the Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-

threatening and fast-degenerating condition for three days; or delayed major surgery for over two years." (alterations and internal quotation marks omitted)); *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (holding that delay in treatment of wrist and finger fractures due to "the two nurses and [the doctor] misdiagnos[ing] [the plaintiff's] injuries, and fail[ing] to recognize the severity of those injuries . . . might conceivably show malpractice, but they do not state an Eighth Amendment claim."); *cf. Lloyd v. Lee*, 570 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (finding "a sixteen-month delay from the time [the plaintiff] was injured until he finally obtained relief in the form of surgery on his shoulder," to be sufficient to defeat a motion to dismiss where the plaintiff "purportedly experienced extreme pain, discomfort, and loss of mobility" throughout the relevant period). Here, the alleged delay in scheduling surgery was minimal, with less than one month transpiring between the injury and the surgery. (*See* SAC 9–10.) During this time, Plaintiff's doctors were exploring other medical treatments, prescribing him pain medication, (*See id.* at 9), and allowing for Plaintiff to have access to medical care, as he claims to have been in medical "if not every[]day[,] every other day," (Pl.'s Opp'n ¶ 4).

To the extent that alleges that Dr. Soden and Nurse Simpkins were deliberately indifferent following his surgery, that claim also fails. While Plaintiff alleges that Dr. Soden and Nurse Simpkins didn't follow the advice of the specialist surgeon, that is not in itself an Eighth Amendment violation. "Disagreements among treating medical professionals do not create an inference of deliberate indifference." *Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, at *7 (S.D.N.Y. Feb. 8, 2017); *see also Smith v. Wilson,* No. 12-CV-1152, 2013 WL 5466857, at *9 (N.D.N.Y. Sept. 30, 2013) ("The fact that [the] [d]efendant . . . reached a different conclusion than . . . any of [the] [p]laintiff's other doctor[s], is not actionable where . . . [the] [d]efendant['s] . . . determination was based on reasonable medical judgment."); *Williams v. Smith*, No. 02-CV-

15

4558, 2009 WL 2431948, at *9 (S.D.N.Y. Aug. 10, 2009) ("[A] prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference."), *reconsideration denied,* 2009 WL 5103230 (S.D.N.Y. Dec. 23, 2009); *Ravenell v. Van der Steeg,* No. 05-CV-4042, 2007 WL 765716, at *6 (S.D.N.Y. Mar. 14, 2007) ("While a plaintiff may be able to state an Eighth Amendment claim where a doctor acts without medical justification, no claim is stated when a doctor disagrees with the professional judgment of another doctor." (internal quotation marks omitted)); *McKenna v. Wright,* No. 01-CV-6571, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) ("While a plaintiff may be able to state an Eighth Amendment claim where a doctor acts without medical justification, 'no claim is stated when a doctor disagrees with the professional judgment of another doctor.'" (quoting *White v. Napolean,* 897 F.2d 103, 110 (3d Cir. 1990)) (italics omitted).  With respect to the claims regarding changing his bandages on the surgical wound, "[w]hile not changing Plaintiff's bandages daily may potentially amount to negligence, nothing alleged in the [Plaintiff's papers] makes it plausible that [Dr. Soden and Nurse Simpkins] knew of and consciously disregarded an excessive risk to Plaintiff's health and safety." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *5 (S.D.N.Y. July 3, 2013); *see also Woods v. Goord*, No. 01-CV-3255, 2002 WL 731691, at *6 (S.D.N.Y. Apr. 23, 2002) (holding that an "alleged deprivation of care caus[ing] a localized infection that lasted for three days is not a condition approaching urgency, degeneration or great pain," and in any event, such allegations state, "at most, a claim for one instance of medical malpractice").  Plaintiff does not allege that Dr. Soden or Nurse Simpkins acted with anything beyond mere negligence in treating his wounds.  In fact, it appears that Plaintiff was taken to an outside doctor on May 3, 2016, four days after his surgery, to immediately treat the infection.  (*See* SAC 8.)

Regarding the disagreement about the proper pain medications following the surgery, Plaintiff admits that he was indeed given pain medication by Nurse Simpkins, (*see* Pl.'s Letter 3 (alleging Plaintiff never got the medication prescribed by the specialist, but instead Nurse Simpkins "gave [him] what they wanted to[]")).  Under such circumstances, where medication was indeed given, just not the medication Plaintiff sought, "courts have repeatedly declined to find that a medical provider was deliberately indifferent to an inmate's medical needs" when a plaintiff challenges "the type and quantity of pain medication." *Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at *5 (S.D.N.Y. Feb. 11, 2015); *see also Veloz v. New York,* 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) ("Differences in opinion by a doctor and a prisoner over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment.").

Each of these issues implicates medical judgments of Dr. Soden, Dr. Jerkins, and Nurse Simpkins, and, at worst, constitute negligence amounting to medical malpractice, but not the Eighth Amendment.  Accordingly, Plaintiff has failed to state an Eighth Amendment claim as to Dr. Soden, Dr. Jerkins, or Nurse Simpkins.

### c.  DuBois and Decker

DuBois is an Orange County Sheriff and Decker is an Orange County Correctional Administrator.  (*See generally* SAC.)  "It is well settled in th[e] [Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brown v. City of New York*, No. 13-CV-6912, 2017 WL 1390678, at *6 (S.D.N.Y. Apr. 17, 2017) (internal quotation marks omitted).  In order to establish liability, a § 1983 plaintiff must show that the defendants "were personally involved in the allegedly unlawful conduct," *id.* at *7, because "supervisor liability in a § 1983 action depends on a

showing of some personal responsibility, and cannot rest on respondeat superior," *Hernandez*, 341 F.3d at 144 (italics omitted). Under § 1983, a supervisor may be shown to have been liable in the following ways:

> (1) actual direct participation in the constitutional violation[;] (2) failure to remedy a wrong after being informed through a report or appeal[;] (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue[;] (4) grossly negligent supervision of subordinates who committed a violation[;] or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).[5]

As discussed above, the conduct of the Orange County Jail medical staff did not rise to the level of an Eighth Amendment violation. Moreover, even were there to have been any deliberate indifference to Plaintiff's medical needs—which there was not—Plaintiff has not suggested the existence of a company-wide policy or custom, let alone one created by DuBois and Decker, which would have resulted in his alleged lack of medical treatment. In fact, Plaintiff fails to allege what role, if any, DuBois and Decker had in his medical treatment, outside of the denial of his grievance by Decker. (*See* SAC at 4, 22.) While personal involvement may arise where a defendant is "informed of the violation" and "fail[s] to remedy the wrong," *Colon*, 58 F.3d at 873, a prison official may also "rely upon and be guided by the opinions of medical personnel" and "cannot be held to have been 'personally involved' if he does so," *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002); *cf. Hardy v. Diaz*, No. 08-CV-1352, 2010

---

[5] Though the decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), has called into question the validity of the *Colon* factors, this Court "has already expressed its agreement with those cases holding that all five categories under *Colon* are still valid unless and until the Second Circuit holds otherwise." *Samuels v. Prack*, No. 13-CV-8287, 2017 WL 934706, at *6 (S.D.N.Y. Mar. 8, 2017).

WL 1633379, at *7 (N.D.N.Y. Mar. 30, 2010) ("It is clear that 'affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under [§] 1983,' particularly if the grievance involves medical care and the reviewer has no medical training." (quoting *Manley v. Mazzuca,* No. 01-CV-5178, 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (alteration omitted)). There is no allegation that either DuBois or Decker rendered improper treatment to Plaintiff, or that they knew of and disregarded an excessive risk to his health. Instead, Plaintiff relies upon the mere existence of "the chain of co[m]mand," in the prison, (Pl.'s Opp'n ¶ 5), which is not enough to find that either DuBois or Decker is personally liable. *See Keitt v. City of N.Y.*, 882 F. Supp. 2d 412, 444 (S.D.N.Y. 2011) ("Mere 'linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.'") (quoting *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)). Accordingly, Plaintiff has failed to plausibly allege that either DuBois or Decker were personally involved in any alleged constitutional deprivation.

### 3. State Law Claims as to All Moving Defendants

Defendants contend that if the Complaint can be construed as raising any state law claims, those claims should be dismissed because Plaintiff has not complied with the notice-of-claim requirements. (*See* Defs.' Mem. 21.) The Court does not need to reach merits of these claims, however, because it declines to exercise supplemental jurisdiction over any state law claims.

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may exercise jurisdiction over related state-law claims when an independent

basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)).  The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (internal quotations omitted).  "District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'"  *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "In weighing these values, courts look to 'the circumstances of each particular case.'"  *Id.* at 391-92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

Because the Court dismisses all federal claims against the moving Defendants, the Court declines to exercise supplemental jurisdiction over any possible state law claims against those Defendants at this time.  Plaintiff may, however, reassert those state law claims in any amended complaint, and the Court's acceptance of jurisdiction over those claims will be reassessed at the appropriate time.[6]

---

[6] While the Court has not addressed the merits of Defendants' Motions To Dismiss the state law claims, Plaintiff is advised that he must plead to having timely satisfied the state notice-of-claim requirements if he elects to file an amended complaint.  *See O'Leary v. City of N.Y.*, 938 F. Supp. 2d 410, 416 (E.D.N.Y. 2013) ("Notice of claim requirements are strictly construed by New York state courts, and failure to provide a notice of claim generally requires dismissal of a plaintiff's state law claims." (internal quotation marks omitted)).

## III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. Plaintiff must file any amended complaint within 30 days. Failure to do so may result in dismissal of this Action with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 39), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated: March 29, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21