UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKEEL QUADEER WALLER,

Plaintiff,

v.

SHERIFF CARL DUBOIS; COUNTY OF
ORANGE; CORRECT CARE SOLUTIONS;
RN NURSE DIANE; DOCTOR SODEN;
DOCTOR ELLIOT WAGNER; MD OSCAR
JERKINS; and COLONEL KENNETH
DECKER,

Defendants.

No. 16-CV-6697 (KMK)

OPINION & ORDER

Appearances:

Shakeel Quadeer Waller
Attica, NY
*Pro se Plaintiff*

Jeremy J. Hourihan, Esq.
Paul Andrew Sanders, Esq.
Jonathan H. Bard, Esq.
Barclay Damon LLP
Albany, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Shakeel Quadeer Waller ("Plaintiff"), currently an inmate at Attica

Correctional Facility, brings this Action, pursuant to 42 U.S.C. § 1983, against the County of

Orange, Correct Care Solutions ("Correct Care"), Carl DuBois ("DuBois"), Kenneth Decker

("Decker"), Dr. Marianne Soden ("Dr. Soden"), Dr. Oscar Jerkins ("Dr. Jerkins"), Dr. Elliot

Wagner ("Dr. Wagner"), and Diane Simpkins ("Simpkins") (collectively, "Defendants").

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by failing to

provide him with proper medical care to treat a knee injury suffered while playing basketball at

Orange County Jail. (*See* Third Am. Compl. ("TAC") ¶¶ 14, 19, 31–33 (Dkt. No. 66).) Before the Court is Defendants' Motion To Dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. ("Defs.'s Mot.") (Dkt. No. 72).)[1] For the reasons to follow, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from the Third Amended Complaint, and are presumed true for the purpose of resolving the Motion.

On April 2, 2016, Plaintiff was playing basketball in the yard at Orange County Jail when he slipped and fell on some loose gravel. (*See* TAC ¶ 15.) As a result of this fall, Plaintiff "was in severe immediate pain in his right knee." (*Id.*) A "medical code" was called in and officers and medical staff responded. (*Id.*) Plaintiff was placed in a wheelchair and "taken to medical." (*Id.*) Plaintiff was unable to bend his right knee. (*Id.*)

At the medical facility, photos were taken of Plaintiff's knee, which was "extremely swollen," and Plaintiff "was in severe pain." (*Id.* ¶ 16.) Plaintiff was not taken to an outside hospital for emergency x-rays, but was instead brought back to his cell. (*Id.*) The next day, Plaintiff was taken back to medical and x-rays were taken of his knee injury, which was now "extremely swollen" and left him in "excruciating pain." (*Id.* ¶ 17.) Plaintiff was then returned to his cell "without any serious medical attention." (*Id.*)

The following day, April 4, 2016, Plaintiff was taken back to medical to be seen by Dr. Wagner, but Dr. Wagner could not locate Plaintiff's x-rays. (*Id.* ¶ 18.) Dr. Wagner "briefly

---

[1] All Defendants except for Dr. Wagner have joined in the Motion. As noted below, Dr. Wagner has been served in this case, but has yet to appear.

examined" Plaintiff's right knee, and determined that Plaintiff should be taken to an outside medical facility for further treatment.  (*Id.*)  However, rather than send Plaintiff to an outside hospital immediately, Plaintiff was returned to his cell, "taken off bed rest, and was allowed to move around the facility again as if he didn't have a severe knee injury."  (*Id.*)

Plaintiff alleges that "[b]y this time, Defendants Correct Care Solutions, Dubois, Simpkins . . . , Wagner, [and] Decker[,] who all have a responsibility as correction facility employees to provide care, custody, and control to inmates housed in their facility, were aware that [P]laintiff had a severe knee injury."  (*Id.* ¶ 19.)  Plaintiff alleges that Defendants knew of Plaintiff's injury because he "had already taken x-rays and [P]laintiff was constantly complaining of severe pain," and that it was "obviously apparent [P]laintiff was in terrible pain just by observing [his] movements in his day to day interactions."  (*Id.*)  Despite this knowledge, Plaintiff was not moved from his second-floor cell, requiring him to climb stairs regularly, and was not placed on bed rest or taken to the emergency room.  (*Id.*)

Three days later, on April 7, 2016, Plaintiff "asked medical if they had found his x-rays yet" and was "told by Correct Care Solutions staff that they did not know."  (*Id.* ¶ 20.)  On April 8, 2016, Plaintiff "complained of severe pain to a Correct Care Solutions Staff member (nurse)" and asked whether his x-rays had been found.  (*Id.* ¶ 21.)  The nurse informed Plaintiff that "the right Patellar [sic] came off," and that she was unaware of any statements by Dr. Wagner regarding a prior injury suffered by Plaintiff.  (*Id.*)  However, she did inform Plaintiff that Dr. Wagner had been fired.  (*Id.*)

"After several more days of complaining about pain," Plaintiff returned to the medical facility to see a nurse on April 11, 2016, who informed Plaintiff that his x-rays showed "an old right knee fracture."  (*Id.* ¶ 22.)  Plaintiff denied ever hurting his knee before.  (*Id.*)  The nurse

told Plaintiff that he would be sent to an outside facility, but until then he would have to return to his normal cell, rather than a "medical unit." (*Id.*) However, on both April 16 and April 18, 2016, Plaintiff was informed by "Correct Care Solutions staff" that he was "on the list to see the outside Doctor," but that the timing had not yet been determined. (*Id.*)

Seventeen days after Plaintiff's initial knee injury, and sixteen days since his x-rays were taken, Plaintiff was walking with crutches and a knee brace and had still not been moved to a medical unit or gone to an outside medical facility for treatment. (*Id.* ¶ 23.) Plaintiff "had asked to be moved on numerous occasions" but was never moved. (*Id.*) Plaintiff also "continued to complain of severe pain indicating whatever treatment he was receiving for pain was not adequate but [P]laintiff's pain was ignored." (*Id.*)

On April 18, 2016, Plaintiff was in recreation watching fellow inmates play handball. (*Id.* ¶ 24.) As he turned to leave, Plaintiff's crutches "hit the steps" and Plaintiff "flipped over his crutches" and "fell hard on the concrete." (*Id.*) Plaintiff "reported to staff" that his head, neck, and back hurt from the fall, as well as his left wrist and right knee. (*Id.*) An ambulance was called and Plaintiff was taken to an outside hospital emergency room. (*Id.*) At the emergency room, an MRI, CAT scan, and x-ray were performed on Plaintiff's right knee, as well as his left wrist and right thumb. (*Id.* ¶ 25.) Plaintiff was prescribed Percocet and his knee was placed in "a proper knee brace." (*Id.*) Plaintiff was told he would need to return to see a specialist the "next day or day after [at the] latest." (*Id.*) Plaintiff was then returned to the jail. (*Id.*)

Upon his return, Correct Care "nursing staff and Doctor" told Plaintiff that he was scheduled to see an outside specialist, but that they would not give him additional Percocet,

prescribing him Motrin instead.  (*Id.* ¶ 26.)  Plaintiff "remained in severe pain due to lack of pain medication and proper medical care."  (*Id.*)

After Plaintiff saw an outside specialist, it was determined that emergency surgery was required, and that the surgery should happen "in the next 2 days."  (*Id.* ¶ 27.)  However, the surgery did not occur until April 29, 2016.  (*Id.*)  The surgeon told Plaintiff that because of the delay since the initial injury, "there would very likely be permanent damage and [P]laintiff's knee would never be the same again."  (*Id.*)  The surgeon also stated that Plaintiff should have been brought to the emergency room when the injury first occurred.  (*Id.*)

Both before and after the surgery, "Correct Care Solutions and Dr. Jerkins refused to give [P]laintiff" the pain medication that was prescribed by the outside specialist, and instead gave Plaintiff "less effective pain medication that did not help [him]."  (*Id.* ¶ 28.)  Plaintiff alleges that Dr. Soden and Dr. Jenkins knew the pain medication was not working and that Plaintiff was still in severe pain, "but chose to ignore it."  (*Id.*)  Instead of the prescribed pain medication, Plaintiff was placed "back on the same meds" that had not worked to reduce his pain, despite Plaintiff's continuing complaints of pain.  (*Id.* ¶ 29.)

Plaintiff underwent surgery on his knee on April 29, 2016.  (*Id.* ¶ 27.)  The surgery lasted from 7:30 a.m. to 2:00 p.m. and involved 25 stitches and 25 staples.  (*Id.* ¶ 30.)  The hospital provided instructions on proper care and cleaning of his surgical wound.  (*Id.*)  These instructions were given directly to Dr. Soden by phone.  (*Id.*)  Plaintiff alleges that the cleaning and proper dressing of his wound "was never done [until] Plaintiff had to combat an infection [because of] [im]proper care."  (*Id.*)

Plaintiff alleges that Defendants thus "showed deliberate indifference" to his serious injury and that he "was not adequately treated" for his pain.  (*Id.* ¶ 31.)  Plaintiff seeks

compensatory damages in the amount of $5,000,000, as well as attorneys' fees and costs, "and such additional relief as the Court may deem just and proper." (*Id.* ¶ 33.)

### B. Procedural Background

Plaintiff filed his original Complaint on August 25, 2016. (*See* Dkt. No. 2.) Plaintiff's request to proceed in forma pauperis was granted on December 7, 2016. (*See* Dkt. No. 6.) On December 23, 2016, Chief Judge McMahon issued an order directing Plaintiff to amend his complaint to add detail to his claims. (*See* Order to Amend (Dkt. No. 7).) After receiving an extension to file his Amended Complaint, (*see* Order (Dkt. No. 10)), Plaintiff filed his Amended Complaint on March 24, 2017, (*see* Am. Compl. (Dkt. No. 11)). On June 27, 2017, after being informed of the need for more detail in the pre-motion letter, (*See* Order (Dkt. No. 21)), counsel for all Defendants but Dr. Wagner submitted a letter to the Court requesting permission to file their Motion To Dismiss on behalf of the appearing Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), (*see* Letter from Jonathan H. Bard, Esq., to Court (Dkt. No. 22)). Plaintiff thereafter filed a Second Amended Complaint on July 6, 2017, wherein he reasserted the identical factual scenario alleged in the Amended Complaint. (*See* Second Am. Compl. ("SAC") (Dkt. No. 28).) On July 20, 2017, the Court entered an Order that Defendants could file their Motion To Dismiss by August 12, 2017, and Plaintiff should respond to any motion by September 12, 2017. (*See* Mot. Scheduling Order (Dkt. No. 32).)

On August 9, 2017, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 39–42.) Dr. Wagner did not join the Motion, though he was served on August 7, 2017. (*See* Dkt. No. 43.) Plaintiff filed his opposition to Defendants' Motion on August 23, 2017, (Dkt. No. 45), and Defendants filed a reply on August 31, 2017, (Dkt. No. 46).

While the Motion was pending, Plaintiff filed a letter to the Court seeking appointment of counsel. (*See* Letter from Plaintiff to Court (Nov. 22, 2017) (Dkt. No. 49).) Plaintiff then submitted a formal application requesting counsel in this Action, (*see* Application for Counsel (Dkt. No. 50)), which the Court denied without prejudice on January 8, 2018, (*see* Order (Dkt. No. 54)).

On March 29, 2018, the Court issued an Opinion and Order granting Defendants' Motion without prejudice. (*See* Op. & Order on Defs.' Mot. To Dismiss ("Opinion") (Dkt. No. 59).) The Court dismissed Plaintiff's claims against County of Orange and Correct Care for failure to sufficiently plead municipal liability as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See* Opinion 7–10.) The Court dismissed Plaintiff's Eighth Amendment claim against Dr. Soden, Dr. Jerkins, and Nurse Simpkins for failure to state a deliberate indifference claim, (*id.* at 13–17), and dismissed Plaintiff's claims against DuBois and Decker for failure to allege personal involvement in any constitutional deprivation, (*id.* at 17–19). Finally, the Court declined to exercise jurisdiction over any state law claims. (*See id.* at 19–20.)

Plaintiff filed the operative Third Amended Complaint on June 5, 2018. (*See* TAC.) With leave of the Court, (Dkt. No. 69), Defendants filed the instant Motion To Dismiss on August 23, 2018, (Defs.' Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 76)). Plaintiff filed a response on September 13, 2018. (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 78).) Defendants filed a reply on September 18, 2018. (Defs.' Reply in Further Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 79).)

## II. Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).

B.  Analysis

Liberally construed, the Third Amended Complaint alleges that the delay in treatment of Plaintiff's knee, the decision to give him a different pain medication than prescribed by his specialist, and the failure to accommodate his injury by moving him to a medical unit from his regular cell, constituted deliberate indifference in violation of the Eighth Amendment.

1.  County of Orange and Correct Care Monell Liability

Defendants argue that Plaintiff has failed to state a claim for municipal liability against either the County of Orange or Correct Care. (*See* Defs.' Mem. 6–8.) As a general rule, private entities like Correct Care are not liable under § 1983, but "conduct that is formally 'private' may

become so entwined with governmental policies or so impregnated with a governmental

character as to become subject to the constitutional limitations [p]laced upon state action." *Perez*

*v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974) (citation omitted); *see also Sherlock v.*

*Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is

responsible for providing medical attention to persons held in its custody may make an

independent contractor rendering such services a state actor within the meaning of § 1983 with

respect to the services so provided . . . ." (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). For

example, when a private company provides medical care in prisons, it "performs a role

traditionally within the exclusive prerogative of the state and therefore . . . is the functional

equivalent of the municipality." *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919,

at *2 (S.D.N.Y. Mar. 19, 2013). Correct Care will therefore be treated as a municipal actor for

the purposes of this Motion. *See Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351,

2017 WL 2274485, at *5 (S.D.N.Y. May 24, 2017) ("Corizon, although a private entity, is

treated as a municipal actor for purposes of this lawsuit.").

     In *Monell*, the Supreme Court held that municipalities may be sued under § 1983 "where

. . . the action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by [the municipality's]

officers." 436 U.S. at 690. "It is axiomatic that municipalities cannot be held liable pursuant to

§ 1983 on a respondeat superior theory." *Betts v. Shearman*, No. 12-CV-3195, 2013 WL

311124, at *15 (S.D.N.Y. Jan. 24, 2013) (italics omitted) (citing *Monell*, 436 U.S. at 690). "To

hold a [municipal actor] liable under § 1983 for the unconstitutional actions of its employees, a

plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New*

*York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation and alteration omitted). There are four ways a plaintiff may allege a policy or custom:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of [the] plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Betts v. Rodriquez*, No. 15-CV-3836, 2016 WL 7192088, at *5 (S.D.N.Y. Dec. 12, 2016) (citation and quotation marks omitted).

The Court concluded that Plaintiff's prior complaint failed to allege any formal policy or practice that could establish municipal liability under *Monell*. (*See* Opinion 7–10.) In the Third Amended Complaint, Plaintiff has not included any new allegations of any formal policy or practice that would substantiate a claim under *Monell* as to either the County of Orange or Correct Care. Plaintiff does not allege the existence of a policy put in place by either the County of Orange or Correct Care to deny or delay someone being held at Orange County Jail from receiving medical care. Indeed, Plaintiff does not allege that any of the individual Defendants works for Correct Care. (*See* TAC ¶¶ 3–10.) Although he does include several general allegations against "Correct Care Solutions" and "Correct Care Solutions Staff," (*see, e.g.*, TAC ¶¶ 19, 20, 21, 23, 26, 28), general allegations that municipal employees violated Plaintiff's rights are insufficient because municipal liability cannot be established "on a respondeat superior theory," *Betts*, 2013 WL 311124, at *15; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that municipalities "are not vicariously liable under § 1983 for their employees' actions"); *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor."). Further, although Plaintiff now identifies all of the individual

11

Defendants as employees of County of Orange, (*see* TAC ¶¶ 3–10), Plaintiff does not allege that any of them had "final decision making authority" such that their direct actions could establish municipal liability, *Betts*, 2016 WL 7192088, at *5.

Additionally, and as discussed in the Court's Opinion dismissing Plaintiff's Second Amended Complaint, although it is possible that Plaintiff seeks to imply that the lack of treatment he received was actually part of an implicit and accepted custom at Orange County Jail or by Correct Care, there are no facts alleged in the Third Amended Complaint that connect his treatment to a practice or custom at the County of Orange or Correct Care, thus dooming Plaintiff's claims. *See Thomas v. City of New York*, No. 16-CV-2924, 2016 WL 3951094, at *2 (E.D.N.Y. July 20, 2016) (granting a motion to dismiss where the "plaintiff [did] not allege . . . a policy officially adopted by the City of New York and a causal connection between a policy and the deprivation of [the] plaintiff's constitutional rights"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *15 (S.D.N.Y. Mar. 29, 2016) (finding allegations that Correct Care, among other defendants, "acted pursuant to a policy or custom, without any facts suggesting the policy's existence, are plainly insufficient" (citation, alterations, and quotation marks omitted)); *Washington v. Westchester Cty. Dep't of Correction*, No. 13-CV-5322, 2015 WL 408941, at *10 (S.D.N.Y. Jan. 30, 2015) ("[E]ven had [the plaintiff] alleged a viable claim for deliberate indifference as to any of the individual defendants, he has failed to allege any facts that would support a *Monell* policy or practice claim against either [Correct Care or Westchester County], necessitating dismissal.").

Finally, Plaintiff includes no allegations suggesting that a failure to train employees caused his injuries. *See Khanukayev v. City of New York,* No. 09-CV-6175, 2012 WL 3538729, at *4 (S.D.N.Y. Aug.13, 2012) (dismissing a failure to train claim where "the complaint [does

not] . . . allege . . . the manner in which there was a failure to train"); *Araujo v. City of New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where the plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct"). Accordingly, Plaintiff has failed to establish municipal liability as to either the County of Orange or Correct Care.

### 2. Eighth Amendment Claims as to the Individual Defendants

Plaintiff alleges that Defendants "showed deliberate indifference when [he] continued to complain of serious pain for a serious physical injury and was not adequately treated for his . . . pain." (TAC ¶ 31.) Defendants argue that Plaintiff's claims against Simpkins, Dubois, and Decker must be dismissed for failure to allege personal involvement. (Defs.' Mem. 8–10.) Defendants further argue that Plaintiff has failed to state a claim for deliberate indifference to any serious medical need with respect to any of the Defendants. (*Id.* at 10–18.)

#### a. Standard of Review

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that the "conditions of confinement [were] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments."[2] *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Here, too, the

---

[2] On February 6, 2018, Defendants provided the Court with a Certificate of Disposition confirming that Plaintiff was convicted on March 22, 2016, thus making him a convicted prisoner at the time of the incident occurring on April 2, 2016. (Letter from Jonathan H. Bard, Esq., to the Court ("Bard Letter") (Dkt. No. 55).)

inquiry proceeds by two steps. "First, the plaintiff must establish that he suffered a sufficiently serious constitutional deprivation. Second, the plaintiff must demonstrate that the defendant acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (quotation marks omitted). Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and the second "asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003); *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (same). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock*, 315 F.3d at 162 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the defendant must "appreciate the risk to which a prisoner was subjected," and had a "subjective awareness of the harmfulness associated with those conditions to be liable for meting out that punishment." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (quotation marks omitted). "[M]ere negligence" is not enough to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quotation marks omitted); *see also Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014) (same). Relatedly, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

### b. Nurse Simpkins, Sheriff DuBois, and Colonel Decker

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed

to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff makes no allegations regarding any conduct by Simpkins, DuBois, and Decker anywhere in the Complaint. Plaintiff alleges only that Simpkins, DuBois, and Decker, along with all other Defendants, "have a responsibility as correctional facility employees to provide care, custody, and control to inmates," and that were "aware that [P]laintiff had a severe knee injury" because he had already had x-rays taken and was constantly complaining of severe pain. (TAC ¶ 19.) Plaintiff also alleges that "17 days . . . elapsed" between when Simpkins, DuBois, and Decker, along with all other Defendants "had taken x-rays of [P]laintiff's right knee and determined that either [P]laintiff's 'right patellar [sic] had come off' or that [P]laintiff had a 'right knee fracture.'" (*Id.* ¶ 23.)

Plaintiff's general allegations that all Defendants were aware of his serious medical needs and ignored them, cannot establish personal involvement in a violation of Plaintiff's constitutional rights. *See Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018) ("A complaint that lumps all the defendants together . . . and provides

no factual basis to distinguish their conduct fails to satisfy [Rule 8]." (citations, quotation marks, and alterations omitted)); *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." (citations and quotation marks omitted)).  Without any allegations that Simpkins, DuBois, or Decker directly participated in Plaintiff's treatment or otherwise directly permitted a violation of his constitutional rights, Plaintiff's claims against them must fail.  *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding personal involvement not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation (citation omitted)); *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (holding personal involvement not established where the "[c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in . . . or somehow permitted" the violation).

Additionally, even if Plaintiff's conclusory allegations were sufficient to establish that Simpkins, DuBois, and Decker were *aware* that Plaintiff suffered a serious injury, there are no allegations that they had any involvement in Plaintiff's treatment that could establish they were deliberately indifferent to his medical needs.  *See Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 274 (N.D.N.Y. 2018) ("[The] [p]laintiff's conclusory allegation that [the defendant] refused to treat him or send him to a hospital fails to plausibly suggest that the defendant was deliberately indifferent to any serious medical need."); *Jimenez v. Sommer*, No. 14-CV-5166, 2017 WL 3268859, at *8 (S.D.N.Y. July 28, 2017) (holding "conclusory assertion" that the defendant "was aware of [the plaintiff's injury] but failed to recommend proper medical treatment" fails to

"indicate that [the defendant] had the requisite culpable state of mind to satisfy the subjective prong of a deliberate[] indifference claim" (citation omitted)); *Melvin*, 2016 WL 1254394, at *10 (collecting cases for the proposition that "[c]onclusory allegations that medical staff defendants were aware of a [prisoner's] medical needs and failed to provide adequate care are generally insufficient to state an Eighth Amendment claim of inadequate medical care" (citation omitted)). Finally, as discussed in the Court's Opinion, to the extent Plaintiff seeks to hold DuBois and Decker liable because they held positions of authority, mere "linkage in the prison chain of command" does not suffice to establish personal involvement. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Keitt v. City of N.Y.*, 882 F. Supp. 2d 412, 444 (S.D.N.Y. 2011) ("Mere 'linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.'" (quoting *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003))). Plaintiff's claims against Simpkins, DuBois, and Decker are therefore dismissed.

### c.  Dr. Jerkins and Dr. Soden

The Court found that Plaintiff's prior compliant failed to state a deliberate indifference claim with respect to the delay in his surgery and treatment while he awaited surgery.  (*See* Opinion 13–14.)  The Court found that based on Plaintiff's own allegations, "Plaintiff's medical needs were not ignored," as he "was seen by Dr. Wagner and Dr. Jerkins, as well as numerous unnamed nurses and doctors, who determined that the use of Motrin, combined with bed rest, crutches, and a knee brace, would be appropriate to treat Plaintiff's knee injury," and that "Plaintiff's request to see an outside doctor for further evaluation was not denied, and indeed was facilitated within less than three weeks."  (Opinion 13–14.)  The Court also held that the "alleged delay in scheduling surgery was minimal, with less than one month transpiring between the

injury and the surgery," during which time Plaintiff's doctors "were exploring other medical treatments, prescribing him pain medication, and allowing for [him] to have access to medical care." (*Id.* at 15.) Finally, the Court concluded that to the extent Plaintiff sought to establish a deliberate indifference claim based on his treatment following surgery, Plaintiff's allegations that he was prescribed a different pain medication than the one recommended by his specialist, and that his wound was not properly cleaned and dressed, do not establish an Eighth Amendment violation. (*Id.* at 16–17.)

Plaintiff's allegations against Dr. Soden and Dr. Jerkins regarding treatment of his injury, scheduling of his surgery, and aftercare following his surgery are substantively identical to his prior complaint. The Court expressly considered Plaintiff's general allegations that his surgery was improperly delayed, (*see* Opinion 14–15; TAC ¶¶ 23, 27), that the prison medical staff, including Dr. Jerkins and Dr. Soden, prescribed him different pain medication than that recommended by his specialist despite the fact that it did not work as well, (*see* Opinion 15–17; TAC ¶ 28), and that Dr. Soden failed to properly treat his wound after surgery, resulting in infection, (*see* Opinion 16; TAC ¶¶ 30–31). (*See also* Opinion 2–3.) To the extent Plaintiff includes additional allegations regarding the care he received, they are directed at "medical staff," (TAC ¶ 15), or "Correct Care Solutions staff," (*id.* ¶¶ 20–22), rather than at any specific Defendant. None of these general allegations can be attributed to Dr. Soden or Dr. Jerkins, particularly those that specifically allege conduct by Correct Care employees, because Plaintiff alleges that Dr. Soden and Dr. Jerkins are employed by County of Orange. (TAC ¶¶ 7, 9.) Plaintiff does not include any new facts specifically attributable to Dr. Soden and Dr. Jerkins that could alter the prior conclusion that these allegations failed to state a claim for deliberate indifference. *See Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at *5 (S.D.N.Y.

Feb. 11, 2015) ("[C]ourts have repeatedly declined to find that a medical provider was deliberately indifferent to an inmate's medical needs" when a plaintiff challenges "the type and quantity of pain medication."); *Thomas v. Westchester County*, No. 12-CV-6718, 2013 WL 3357171, at *5 (S.D.N.Y. July 3, 2013) ("While not changing [the plaintiff's] bandages daily may potentially amount to negligence, nothing alleged in the [plaintiff's papers] makes it plausible that [the defendants] knew of and consciously disregarded an excessive risk to [the] [p]laintiff's health and safety."); *Williams v. Smith*, No. 02-CV-4558, 2009 WL 2431948, at *9 (S.D.N.Y. Aug. 10, 2009) ("[A] prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference."), *reconsideration denied*, 2009 WL 5103230 (S.D.N.Y. Dec. 23, 2009).

Plaintiff arguably asserts one new Eighth Amendment claim based on failure to reassign him to a medical cell that would prevent him from having to use stairs and walk long distances. (TAC ¶¶ 23, 31.) However, Plaintiff has not alleged the personal involvement of any Defendant in the decision not to move him, or alleged that any individual Defendant had the authority to reassign him but chose not to, or that he asked any specific Defendant to move him to a different cell and was refused. Because Plaintiff has not alleged any Defendant's personal involvement in his cell assignment, this claim must also fail. *See Falls*, 2018 WL 3768036, at *6 (holding personal involvement not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation (citation omitted)); *Lara-Grimaldi*, 2018 WL 1626348, at *11 (holding personal involvement not established where the "[c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in . . . or somehow permitted" the violation).

Accordingly, Plaintiff's Eighth Amendment claims as to Dr. Soden and Dr. Jerkins are dismissed.

### 3. State Law Claims as to All Moving Defendants

Defendants contend that if the Third Amended Complaint can be construed as raising any state law claims, those claims should be dismissed because Plaintiff has not complied with the notice-of-claim requirements. (*See* Defs.' Mem. 18–21.) However, the Court does not need to reach the merits of these claims because it declines to exercise supplemental jurisdiction over any state law claims.

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)). The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (citations and quotation marks omitted). "District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each

particular case.'" *Id.* at 391-92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

Because the Court dismisses all federal claims against the moving Defendants, the Court declines to exercise supplemental jurisdiction over any possible state law claims against those Defendants at this time.

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Because this is the second adjudication of Plaintiff's claims on the merits and he has failed to state a claim, the dismissal is with prejudice. Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013). Because the Court finds that further amendment would be futile, Plaintiff's claims are dismissed with prejudice. *Melvin*, 2016 WL 1254394, at *24 n.19 (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citation, alterations, and quotation marks omitted)).

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 72), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated: March 29, 2019
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22